UNITED STATES v. THORENS, INC. (No. 4487)[1]

United States Court of Customs and Patent Appeals, January 4, 1945

*Paul P. Rao*, Assistant Attorney General (*Sybil Phillips* and *Joseph F. Donohue* of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* and *Samuel M. Richardson* of counsel) for appellee.

[Oral argument December 7, 1944, by Mr. Donohue and Mr. Richardson]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

The sole question for determination herein relates to the meaning of the term "mounted" as used in paragraph 1406 of the Tariff Act of 1930 in connection with the assessment of duty on an importation of calendars.

---

[1] C. A. D. 298.

The goods were entered at the port of New York and classified by the collector as lithographically printed articles not over twelve one-thousandths of one inch in thickness, and were assessed for duty at the rate of 30 cents per pound.

The importer protested the assessment, urging that the calendars in question exceeded twenty one-thousandths of one inch in thickness and were properly dutiable at the rate of 6 cents per pound under the enumerated paragraph, as modified by the trade agreement with the United Kingdom, T. D. 49753, as lithographically printed articles mounted on paper, cardboard, or other material valued at more than 35 cents per pound and measuring over twenty one-thousandths of one inch in thickness.

Appellant contends that the calendars are not mounted within the purview of the enumerated paragraph, and therefore the lower rate of duty provided for by the treaty with the United Kingdom is not applicable.

Paragraph 1406 of the Tariff Act of 1930, so far as pertinent, reads:

PAR. 1406. Pictures, calendars, * * * placards, and other articles, composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material * * * not specially provided for, shall be subject to duty at the following rates: * * * all articles other than those hereinbefore specifically provided for in this paragraph, not exceeding twelve one-thousandths of one inch in thickness, 30 cents per pound; * * * *Provided*, That in the case of articles hereinbefore specified the thickness which shall determine the rate of duty to be imposed shall be that of the thinnest material found in the article, but for the purposes of this paragraph the thickness of lithographs mounted or pasted upon paper, cardboard, or other material shall be the combined thickness of the lithograph and the foundation on which it is mounted or pasted * * *.

Paragraph 1406 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, so far as pertinent, reads:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 1406 | Pictures, calendars * * * placards, and other articles, composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material * * * not specially provided for in paragraph 1406 or elsewhere in the Tariff Act of 1930, exceeding twenty one-thousandths of one inch in thickness, and valued at more than 35 cents per pound | 6¢ per lb. |

It will be noticed that the above articles designated by name and intended to be provided for in the statute and the trade agreement belong to a particular class of merchandise which is produced by manufacturing lithographers and utilized by merchants, manufacturers, and others as a medium of display advertising of their respective products, service, or enterprise.

For example, a placard is defined generally as a notice posted in a public place; a poster; a bill. When printed and put to use, a placard is a medium of advertising. Also, the calendar, importer's Exhibit 1, the kind that is ordinarily distributed gratuitously, is definitely representative of the particular class of merchandise under consideration.

It will be noted that the calendar which is the subject of this controversy is 10½ inches wide, 13 inches high, and, according to the testimony, one hundred and eighty one-thousandths of one inch in thickness. The solid pasteboard back to which it is annexed protrudes 1½ inches beneath the lower edge of the lithographically printed sheets.

The calendar consists of a frontpiece of 1 sheet of paper lithographically printed to produce a scenic and floral design, and 12 additional sheets. Upon each of these sheets is lithographically printed a calendar for 1 of the respective 12 months of the year 1942, a landscape representation of a scene in Switzerland, suitably diversified to fit the transitory seasons, and a poetic verse printed and ascribed to the month represented.

In the foreground, beneath the lower edge of the sheets of the calendar and upon the cardboard foundation supporting them, are printed in letters amply sufficient to command prompt public attention the words "THORENS, INC.," together with the address of the corporation printed below in smaller letters, "NEW HYDE PARK, NEW YORK."

The calendar is attached to its reinforcing cardboard foundation by a cleverly fashioned device affixed to the top thereof by means of which the calendar sheets are suspended, supported, and displayed. The calendar may thus be hung upon a wall, for which purpose a cord is provided, or it may be otherwise supported for use, for example, upon a desk, bookcase, or mantelpiece.

The device in question consists of an elongated white, celluloid-like tube extending the full length of the top of the calendar and having a diameter of approximately the size of the tip of an adult's little finger.

In the manufacture of this cylindrical device, two layers of the substance of which it is composed were made to partly overlap in the lower portions. In this area, sections of the device were cut out and removed at short and regular intervals, with the result that the remaining or uncut portions of the elongated lower part of the device constitute and provide a uniform series of annexing gadgets.

These gadgets have been fitted through small slots coincidentally perforated through the top of the paper sheets of the calendar and their supporting cardboard foundation, thus firmly affixing the calendar to its foundation and contributing to the calendar the necessary flexibility incidental to its use.

There is no contention in this case that the term "mounted" is to be used in other than its ordinary meaning.

We refer, therefore, to the following recognized authorities for a definition of the term "mounted," as well as for the definitions of other terms used in the enumerated paragraph, and pertinent to the issue involved:

Webster's New International Dictionary (1932):

*mounted* * * * 3. Adjusted or prepared for use; placed on a suitable support, fixed in a setting, etc.; furnished; equipped; as, a *mounted* gun; a *mounted* map; a *mounted* gem.

*foundation* * * * 2. That upon which anything is founded; that on which anything stands, and by which it is supported * * *.

*pasted* * * * 1. Fastened or covered with or as with paste.

Funk & Wagnalls New Standard Dictionary (1925):

*mounted* * * * 4. Attached to a backing, as a photograph.

*foundation* * * * 2. That on which anything is founded and by which it is supported or sustained.

*pasted* * * * 1. Covered with or attached by means of paste.

Appellant calls attention to the term "mount" as recently defined in Webster's New International Dictionary, Second Edition, which, with the exception of definition "10" below, is similar to the definition given by other and earlier authoritative sources:

*mount* * * * 5. To put or fasten upon anything that sustains and fits for use, as a gun on a carriage, a map or picture on paper, a postage stamp in an album, etc.; to prepare for use by placing in proper position or arrangement, as a diamond by setting, a sword blade by adding the hilt, etc. * * * 10. *Book-binding.* To glue or paste, as a sheet of paper, upon a reinforcing ground.

From the references cited and analyzed, we hold that the term "mounted," so far as it relates to the particular subject matter of the controversy herein, means a superimposition of an article upon a foundation for the purpose of display.

Referring to the definition of the term "mount," as printed in the respective dictionaries, appellant contends that "the general phraseology 'to prepare for use, exhibition, ornament, preservation or examination' is not as extensive in scope as it appears to be."

Appellant urges specifically that the device used in mounting the calendar in the instant case is not a permanent fastening, and therefore the calendar is not mounted in the ordinary meaning of the term. The import of its argument is that a calendar or other similar article enumerated in the statute is not "mounted" in the ordinary meaning of the term, unless it is fastened to its foundation with the same degree of permanence as an article mounted by the process of pasting.

It is observed that the definition quoted above by appellant from Webster's New International Dictionary, Second Edition, defining the term "mount" to mean, "*Bookbinding.* To glue or paste, as a sheet of paper, upon a reinforcing ground," is a definition that does

not appear in the earlier edition of the dictionary compiled by the same authors, nor does it appear in the current edition of Funk & Wagnalls New Standard Dictionary.

It may be that until recently, to paste a sheet of paper upon a reinforcing ground was not to "mount" it in the ordinary meaning of the term, and perhaps that is one of the reasons the words "or pasted" were included in the statute. In any event, an article that is "mounted" by the process of pasting is now generally accepted as "mounted" in the ordinary meaning of the term.

As to the "mounted" articles otherwise included in the statute, no qualifying provision was enacted by Congress relative to the medium or process employed to mount such articles. That there was no oversight on the part of Congress in omitting to enact such a provision, is suggested by the number of qualifying processes provided for in the paragraph in question.

For example, the class of merchandise included within its provisions is specifically restricted to merchandise printed by the lithographic process. Congress also provided specifically for articles "mounted" by the invariable medium or process of pasting, and it provided in minute detail the process to be employed by the Collector of Customs in arriving at the rate of duty to be assessed upon an importation of "mounted" merchandise.

To "mount" an article enumerated in paragraph 1406 by a process other than pasting, manufacturing lithographers utilize a varied and widespread number of devices, contrivances, and expedients, practical, ingenious, and fanciful, and constructed of different types and qualities of material.

Obviously, Congress intended to place no qualifying provision in the statute as to the innumerable and ever-changing mediums or processes employed by such manufacturers, nor to require of them a specific standard of stability or permanence, relative to the attaching medium used in the production of a "mounted" article.

It is generally understood that the attaching medium provided in a "mounted" calendar is designed to endure for the life of the calendar, which generally is 1 year, and it is to be implied from the accepted definition of the term "mounted" that the quality of the medium or process utilized in a particular instance will be suitable to fit the mounted article for the purpose to which it is dedicated.

Finally, it may be noted, the courts have held that a calendar may be "mounted" partly by the processes of pasting and partly by the medium of wire staples. *Nippon Yusen Kaisha* v. *United States*, 12 Ct. Cust. Appls. 5, T. D. 39887.

In our opinion, the decision of the Customs Court, to the effect that the lithographically printed calendar herein was dutiable as an entirety, on the basis of the combined thickness of the foundation

and the mounted sheets, and not as lithographically printed articles on the basis of the thickness of the thinnest material found in the article as assessed by the collector of customs, was correct.

For the reasons stated, the judgment is *affirmed*

JACKSON, J., dissents.